# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOMINGO VILLARREAL** | **CIVIL ACTION** |
| **versus** | **NO. 12-1163** |
| **21ST JUDICIAL DISTRICT COURT** | **SECTION: "A" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Domingo Villarreal, is a state prisoner incarcerated at the Riverbend Detention Center, Lake Providence, Louisiana. On March 20, 2006, he pleaded guilty under Louisiana law to possession of more than sixty but less than two thousand pounds of marijuana.[1] On May 31, 2006, he was sentenced to a term of twenty-six years imprisonment and ordered to pay a fine of $100,000. At that point, defense counsel moved to withdraw petitioner's plea; however,

---

[1] State Rec., Vol. I of I, transcript of March 20, 2006; State Rec., Vol. I of I, minute entry dated March 20, 2006.

that motion was denied.[2] Petitioner thereafter sought review by the state's appellate courts, but relief was denied by the Louisiana First Circuit Court of Appeal on December 11, 2006,[3] and by the Louisiana Supreme Court on June 22, 2007.[4]

On or after December 28, 2007, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on August 11, 2010.[6] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on April 1, 2011,[7] and by the Louisiana Supreme Court on February 17, 2012.[8]

On April 19, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[9] The state concedes that the federal application is timely.[10]

---

[2] State Rec., Vol. I of I, transcript of May 31, 2006; State Rec., Vol. I of I, minute entry dated May 31, 2006.

[3] State v. Villarreal, No. 2006 KW 2220 (La. App. 1st Cir. Dec. 11, 2006); State Rec., Vol. I of I.

[4] State v. Villarreal, 959 So.2d 503 (La. 2007) (No. 2007-KP-0065); State Rec., Vol. I of I. The Louisiana Supreme Court denied petitioner's application for reconsideration on September 21, 2007. State v. Villarreal, 964 So.2d 321 (La. 2007) (No. 2007-KP-0065); State Rec., Vol. I of I.

[5] State Rec., Vol. I of I.

[6] State Rec., Vol. I of I, transcript of August 11, 2010; State Rec., Vol. I of I, minute entry dated August 11, 2010.

[7] State v. Villerreal [sic], No. 2010 KW 1869 (La. App. 1st Cir. Apr. 1, 2011); State Rec., Vol. I of I.

[8] State *ex rel.* Villerreal [sic] v. State, 82 So.3d 278 (La. 2012) (No. 2011-KH-0756); State Rec., Vol. I of I.

[9] Rec. Doc. 3.

[10] Rec. Doc. 12, p. 3.

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Petitioner's Claims

### I. Breach of the Plea Agreement

Petitioner's first claim is that his plea agreement was breached. Specifically, he claims that he pleaded guilty based on an agreement that he would receive a five-year sentence. He

argues that the agreement was breached when he was instead sentenced to a term of twenty-six years imprisonment.

The record clearly establishes that petitioner was expressly advised that Louisiana law provided that a person convicted of the crime to which he was pleading guilty "shall be sentenced to serve a term of imprisonment at hard labor for not less than five years nor more than 30 years and to pay a fine of not less than $50,000 and no more than $100,000."[11] The record also conclusively disproves any contention that petitioner was *guaranteed* a five-year sentence as part of the plea agreement. Rather, the record shows that, in exchange for the plea, petitioner was guaranteed *only* that the prosecutor would *recommend* a five-year sentence. For example, the transcript includes the following exchange:

> MR. MACK [defense counsel]:
> ... We have a plea agreement with the state.
>
> THE COURT:
> Possession of marijuana over 2,000 pounds.
>
> MS. PARKER [the prosecutor]:
> Your Honor, the agreement I had reached with Mr. Mack was that we would reduce this to a – the part of the statute that reads 60 pounds and recommend five years DOC to the Court.
>
> THE COURT:
> Well, as long as he knows it's a recommendation only, and I do not feel bound by y'all's recommendations.
>
> MS. PARKER:
> I believe they're fully aware of that, Your Honor, as am I.[12]

---

[11] State Rec., Vol. I of I, transcript of March 20, 2006, p. 5.

[12] State Rec., Vol. I of I, transcript of March 20, 2006, p. 2.

The colloquy also contains the following exchange between the trial judge and petitioner establishing that no other promises were made to him in exchange for his plea:

> THE COURT:
> Have you been promised any leniency if you pled guilty to this charge?
>
> THE WITNESS:
> No, sir.
>
> THE COURT:
> Have I promised you anything?
>
> THE WITNESS:
> No, sir.
>
> THE COURT:
> Has that DA promised you anything other than she is going to recommend to me five years?
>
> THE WITNESS:
> No, sir.
>
> THE COURT:
> Has that lawyer standing next to you promised you anything?
>
> THE WITNESS:
> No, sir.[13]

In the following exchange, the transcript also conclusively proves that the prosecutor in fact abided by the terms of the agreement:

> THE COURT:
> ....
> Madam Prosecutor, would you put your recommendation on the record at this time.

---

[13] State Rec., Vol. I of I, transcript of March 20, 2006, pp. 8-9.

> MS. PARKER:
> 	Yes, Your Honor. In accordance with the plea reduction to the charge, the state is recommending five years with the Department of Corrections without benefits and the mandatory fines as laid out in the statute.
>
> THE COURT:
> 	All right. The Court is going to order a PSI on Mr. Domingo Villareal [sic] since he's not going anywhere for awhile anyway. Under the minium [sic] statute, he probably would rather spend the next two months in the Tangipahoa Parish Jail than the state system. So order a PSI, Madam Clerk, and give him my next two-month date away which is May 31th [sic]. All right. Let me see how many other dope busts he's got.[14]

For these reasons, it is clear that the prosecutor upheld her part of the plea agreement, and this Court finds that there is no factual basis whatsoever for petitioner's contention that the plea agreement has been breached. Therefore, his claim to the contrary has no merit and should be rejected.

To the extent that petitioner is arguing that his plea was invalid because it was based on a misunderstanding that he would actually receive the five-year sentence recommended by the prosecutor, that claim fares no better. "It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). However, when a *habeas* petitioner challenges the validity of his guilty plea, he carries the burden of proving his plea was not in fact knowing and voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, the undersigned finds that petitioner has not met his burden of proof in this case.

---

[14] State Rec., Vol. I of I, transcript of March 20, 2006, pp. 11-12.

For a plea to be considered knowing, "the defendant must have a full understanding of what the plea connotes and of its consequence." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (quotation marks omitted). With respect to sentencing issues, a matter is a "direct consequence" of the plea only if it is related to either the length or nature of the sentence. See id. at 256-57. Therefore, "[o]n federal habeas review, it suffices if a defendant is informed of the maximum term of imprisonment. As long as the defendant understood the length of time he might possibly receive, he was fully aware of his plea's consequences." Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir. 1985) (quotation marks and brackets omitted).

A guilty plea must also be "voluntary." The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts." Hernandez, 234 F.3d at 254 n.3. Thus, while a "knowing" plea is one where the defendant is aware of the direct consequences of his plea, a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." Id.

As previously noted, the transcript clearly proves that petitioner (1) was advised of the maximum sentence he faced, (2) was notified that the prosecutor's recommendation of a lesser sentence was not binding on the court,[15] and (3) stated under oath that he had been offered no other promises in exchange for his plea. Moreover, in the state post-conviction proceedings, District

---

[15] See State v. Barnes, 596 So.2d 302, 304 (La. App. 3rd Cir. 1992) ("Concerning joint sentence recommendations, it is well settled that the sentencing discretion of the trial judge cannot be limited by a sentence recommended by both the state and defendant. The trial judge may accept or reject a joint sentence recommendation.").

Court Judge Ernest Drake emphatically found that petitioner in no way misunderstood the terms of the agreement. Judge Drake stated:

> So the whole premise of Mr. Villarreal's post-conviction relief in that he had some kind of, perhaps, side deal, suggestive deal, understanding or however it was phrased, I didn't feel it had merit, but I went out – what I consider out of the way to get a copy of the boykinization to see if there was anything I told him that could have remotely been construed to be an agreement or suggestion or a wink or a nod or something that would have led him to believe the transporting of 2,640 pounds of marijuana would not have resulted in a severe penalty.
> I could find nothing in that transcript that is – it's almost exact to every other boykinization that I do.[16]

He further noted that it would have been apparent from his demeanor at the plea proceedings that the state's recommendation carried no actual weight with him, stating:

> I really probably owe [the prosecutor] an apology for getting so wound up that day, but I chalked it off that she was not aware of my feeling on [sentencing recommendations], and I know you were standing there.
> So, I mean, there's no way, with as animated as I got, that you could think that was going to carry any weight. There just ain't no way, man.[17]

When defense counsel nevertheless continued to argue that it was petitioner's understanding that he would receive a five-year sentence, Judge Drake flatly rejected that contention: "No, sir. There's no way on God's green Earth that he can convince me of that in light

---

[16] State Rec., Vol. I of I, transcript of August 11, 2010, pp. 5-6.

[17] State Rec., Vol. I of I, transcript of August 11, 2010, p. 8.

of as plain as I am. No, sir, you cannot convince me of that."[18] Judge Drake then denied petitioner's claim, stating:

> I pride myself on talking bluntly with [defendants]. I don't use 50 cent words. I know the Latin words, but I don't use them because I don't want anybody to come up here and make these kind of claims.
> I have – if anything, to a fault, I talk too street language to them, a little raw on occasions, which is probably inappropriate, but there's no way on God's green Earth they can come up here and say they don't understand what the Drakester is saying. You understand? They understand what I'm saying.
> Court hereby denies the – and, further, let the record reflect that Mr. Villarreal talks as good English as I do and perhaps better. He does not need an interpreter, because there was nothing but plain fourth grade English being spoken in here. Denied.[19]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[20] and by the Louisiana Supreme Court.[21]

In light of the foregoing, and in the absence of any evidence whatsoever to the contrary, the Court finds that there is simply no basis on which to conclude that petitioner's plea was unknowing or involuntary. Therefore, under the deferential standards of review mandated by the AEDPA, this claim should be rejected.

---

[18] State Rec., Vol. I of I, transcript of August 11, 2010, p. 10.

[19] State Rec., Vol. I of I, transcript of August 11, 2010, p. 13.

[20] State v. Villerreal [sic], No. 2010 KW 1869 (La. App. 1st Cir. Apr. 1, 2011); State Rec., Vol. I of I.

[21] State *ex rel.* Villerreal [sic] v. State, 82 So.3d 278 (La. 2012) (No. 2011-KH-0756); State Rec., Vol. I of I.

## II. Illegal Traffic Stop

Petitioner's second claim challenges the legality of the traffic stop which led to the discovery of the drugs and his resulting arrest. That claim fails for at least two reasons.

First, this Court is barred from reviewing that claim by Stone v. Powell, 428 U.S. 465 (1976).[22] In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). Interpreting Stone, the United States Fifth Circuit Court of Appeals has held:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the *processes* whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim *whether or not the defendant employs those processes*.

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added). Therefore, the Stone bar applies even in those cases where no motion to suppress was ever filed. Id. at 1192-93. The Stone bar further applies even if the state court rulings on the Fourth Amendment claims were erroneous. Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

---

[22] The state does not expressly raise the Stone bar. Nevertheless, the United States Fifth Circuit Court of Appeals has held that the Stone bar may be raised by the Court. Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir. 1986); Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *6 n.19 (E.D. La. Dec. 23, 2009). The undersigned, through this Report and Recommendation, hereby places petitioner on notice that the Stone bar is being invoked *sua sponte*.

Stone clearly applies in this case. As an initial matter, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007). Moreover, petitioner in fact availed himself of that opportunity. The state court record shows that defense counsel filed a motion to suppress, and the Fourth Amendment claim was fully litigated and denied at an evidentiary hearing.[23] Although he did not do so, petitioner could also have entered a conditional Crosby plea under state law and thereby reserved his right to challenge that pretrial ruling on appeal. State v. Crosby, 338 So.2d 584 (La. 1976); see also State v. Neyrey, 383 So.2d 1222 (La. 1979); State v. Lewis, 85 So.3d 150 (La. App. 2nd Cir. 2012); State v. Scott, No. 2011 KA 0012, 2011 WL 3558211 (La. App. 1st Cir. June 10, 2011), writ denied, 80 So.3d 467 (La. 2012). As a result, it is clear that Stone now prohibits petitioner from asserting a Fourth Amendment claim in this federal proceeding.

Second, even if the Stone bar were not applicable, "[a] voluntary and unconditional guilty plea has the effect of waiving all nonjurisdictional defects in the prior proceedings," including Fourth Amendment claims. United States v. Wise, 179 F.3d 184, 186 (5th Cir. 1999); Sears v. Thaler, Civ. Action No. H-10-2529, 2011 WL 2162272, at *10 (S.D. Tex. May 31, 2011). For the reasons previously discussed in detail, petitioner has not shown that his plea was involuntary, and it is clear that his plea was unconditional. Therefore, this Fourth Amendment claim was waived by entry of his plea and cannot serve as a basis for relief.

---

[23] State Rec., Vol. I of I, transcript of February 16, 2005.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Domingo Villarreal be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this seventeenth day of August, 2012.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.